**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BMO Bank NA,<br><br>      Plaintiff,<br><br>v.<br><br>A to Z Stone & Granite Incorporated, et al.,<br><br>      Defendants. | No. CV-25-00026-TUC-JGZ<br><br>**ORDER** |

      Pending before the Court are Plaintiff BMO Bank N.A.'s Motions for Default Judgment against Defendants A to Z Stone & Granite, Inc., Tigran Beglaryan, and Anahit Beglaryan. (Docs. 13, 19.) Defendants have not appeared in this action or responded to the motions. For the following reasons, the Court will grant Plaintiff's Motions and direct the Clerk of Court to enter default judgment against Defendants A to Z Stone & Granite, Inc., Tigran Beglaryan, and Anahit Beglaryan.

**I.    Background**

      Plaintiff brings the immediate action alleging that Defendant A to Z Stone & Granite ("A to Z") failed to make payments required under a financing agreement. On or about October 1, 2021, Plaintiff BMO Bank N.A. ("BMO") and A to Z entered into a Master Equipment Financing Agreement (the "Agreement"), whereby Plaintiff BMO would provide funding to Defendant A to Z in the principal amount of $97,304.38 to finance the purchase of a Park Industries 5 Axis Saber Saw (Serial No. 250076) (the "Saw"). (Doc. 1-2 at 9.) Pursuant to the Agreement, A to Z was required to make regular monthly payments

to BMO of $1,332.28 for 84 months, with the first payment due November 15, 2021. (*Id.*) A to Z would be in default when payment was not made to BMO within ten days of its due date. (*Id.* at 4.)

On or around October 1, 2021, Defendants Tigran Beglaryan ("Tigran"), President of A to Z, and Anahit Beglaryan ("Anahit") signed a Continuing Guaranty for the Agreement. (Doc. 1-3 at 2.) As Guarantors, Tigran and Anahit personally guaranteed the repayment of the principal amount and fulfillment of all of A to Z's obligations to BMO in the event that A to Z failed to comply with the Agreement. (*Id.*)

A to Z has not made a payment to BMO since January 15, 2024. (Doc. 13-2 at 22.) As of March 31, 2025, A to Z had made 23 payments under the Agreement, totaling $30,642.44. (*Id.*) As of April 1, 2025, A to Z amassed an outstanding balance of $81,269.08 in overdue payments, late charges, and liquidated damages in connection with the Agreement. (*Id.* at 4.)

On January 21, 2025, BMO filed suit against A to Z, Tigran, and Anahit. (*See* Doc. 1.) The Complaint asserts three counts: (1) breach of contract against A to Z for failing to make payments on the Saw in accordance with the Agreement; (2) breach of contract against Tigran and Anahit for failing to perform their obligations as Guarantors under the Continuing Guaranty; and (3) replevin to repossess the Saw. (*Id.* ¶¶ 12–24.) BMO is requesting monetary damages in the amount of $81,269.08, with proceeds from the eventual sale of the Saw to be applied towards the final judgment balance. (Doc. 13-2 at 4.)

BMO served A to Z and Tigran on January 24, 2025. (*See* Docs. 6, 8.) Default was entered against A to Z and Tigran by the Clerk of Court on March 20, 2025. (*See* Doc. 10.) BMO was initially unable to serve Anahit and obtained an order allowing for alternative service on April 2, 2025. (*See* Doc. 14.) BMO successfully served Anahit on April 30, 2025. (*See* Doc. 16.) Default was entered against Anahit by the Clerk of Court on June 2, 2025. (*See* Doc. 18.) Defendants have not responded or otherwise participated in this litigation. BMO seeks default judgment against all Defendants. (*See* Docs. 13, 19.)

## II. Jurisdiction

Federal courts may only adjudicate cases over which they have subject-matter jurisdiction—basically, those cases involving a federal question or diversity of citizenship. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also* 28 U.S.C. § 1331. A party seeking to invoke the federal court's diversity jurisdiction, as here, bears the burden of both affirmatively pleading and proving diversity jurisdiction. *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613–14 (9th Cir. 2016). The essential elements of diversity jurisdiction are: (1) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and (2) diverse residence of all adverse parties. *See* 28 U.S.C. § 1332; *see also Bautista v. Pan Am. World Airlines, Inc.*, 828 F.2d 546, 552 (9th Cir. 1987).

Here, Plaintiff has established diversity jurisdiction. Plaintiff BMO and Defendants are not domiciled in the same state and, therefore, diverse citizenship exists between the adverse parties. BMO is a national bank association with its main office and principal place of business in Chicago, Illinois. (Doc. 1 at 1.) Defendant A to Z is a registered corporation in Arizona, with a principal place of business located in Arizona. (*Id.*) Defendants Tigran and Anahit are both Arizona citizens, domiciled in and residents of Tucson, Arizona. (*Id.* at 1–2.) The amount in controversy is greater than $75,000; BMO affirmatively pled that it sustained damages of $81,269.08 due to Defendants' breach of contract and has provided evidence of such. (*Id.* at 2–3.)

## III. Legal Standard

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After the Clerk of Court enters default, the party must apply to the court for a default judgment. Fed. R. Civ. P. 55(b). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment," as granting or denying relief is entirely within the court's discretion. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing

*Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986)); *see also Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). When deciding whether to grant default judgment, courts within the Ninth Circuit consider seven factors (collectively, "the *Eitel* factors"): (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Upon entry of default by the Clerk of Court, the well-pleaded allegations in the complaint regarding a defendant's liability are to be taken as true, but allegations concerning the amount of damages are not. *Cal. Sec. Cans*, 238 F. Supp. 2d at 1175; *see also TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). A plaintiff must provide proof of all damages sought in the complaint. *Cal. Sec. Cans*, 238 F. Supp. 2d at 1175. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**IV.    The *Eitel* factors favor entry of default judgment against Defendants**

    A. <u>First *Eitel* Factor—Possibility of Prejudice to Plaintiff</u>

The first *Eitel* factor weighs in favor of granting default judgment. BMO provided financing to A to Z for an equipment purchase, which A to Z agreed to repay by signing the Agreement; Tigran and Anahit agreed to guarantee that A to Z made those payments by signing on as Guarantors. (*See* Docs. 1, 13, 19.) Defendants failed to make all monthly payments required by the Agreement and Continuing Guaranty, amassing an outstanding balance of $81,269.08 as of April 1, 2025. (Doc. 13 at 4.) BMO attempted to resolve the matter without judicial involvement by sending invoices to Defendants, (*id.* at 22), and informing Defendants of its intention to exercise repossession of the Saw pursuant to the terms of the Agreement, (Doc. 1 at 4). Defendants' failure to remit payment or allow BMO access to the Saw, along with Defendants' failure to respond to the Complaint or participate

in this litigation, makes it unlikely BMO would recover absent default judgment. Plaintiff BMO would suffer prejudice if its motions for default judgment were denied because it would be without recourse or recovery. *See Cal. Sec. Cans*, 238 F. Supp. 2d at 1177.

### B. Second and Third *Eitel* Factors—Merits of the Substantive Claim and Sufficiency of the Complaint

The second and third *Eitel* factors are often analyzed together and weigh whether a plaintiff has sufficiently "state[d] a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also Cal. Sec. Cans*, 238 F. Supp. 2d at 1175. The Court must review Plaintiff's claims considering the applicable governing law, taking as true all factual allegations in the Complaint. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18; *see also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). The second and third *Eitel* factors weigh in favor of granting default judgment.

BMO asserts two claims of breach of contract against the Defendants for violating the terms of the Agreement and the Continuing Guaranty (Count I and Count II), and one claim of replevin for repossession of the Saw (Count III). (Doc. 1 at 3–4.) BMO has sufficiently pled its two claims for breach of contract,[1] including the existence of the contracts, BMO's performance, Defendants' breach, and the resulting damages. (*See* Docs. 1-2, 1-3.) It is clear from the Agreement that BMO would provide financing to A to Z for the purchase of the Saw, that A to Z agreed to repay that amount in regular monthly installments, and that A to Z's failure to remit payments within ten days of the due dates would constitute a default. (*See* Doc. 1-2.) The Complaint alleges A to Z breached the terms of the Agreement when it defaulted and failed to make minimum monthly payments, and Defendants Tigran and Anahit breached the Continuing Guaranty when they failed to repay all amounts due under the Agreement as required in the event of A to Z's default.

---

[1] The contracts specify that California law governs. Applying Arizona's choice of law rules, which follow the Restatement (Second) of Conflict of Laws (1971) ("Restatement"), the Court determines that the parties' choice of California law is valid, and California substantive law governs the breach of contract claims. *See* Restatement §§ 187–88.

(Doc. 1 at 3–4.) Plaintiff's Complaint also outlines the damages sustained in overdue payments and late charges because of Defendants' breach, and provides evidence that the damages total $81,269.08. (*Id.*)

Taken as true, the Court concludes the factual allegations in the Complaint also establish that Plaintiff BMO has sufficiently stated a claim for replevin against Defendants for their refusal to allow BMO to repossess the Saw, following Defendants' default, as outlined in the Agreement. (*Id.* at 4.) Replevin is an available remedy because it is provided for under Arizona law. *See* Fed. R. Civ. P. 64 ("[E]very remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."). Arizona laws specific to replevin (Ariz. Rev. Stats. §§ 12-1301–12-1314) require the filing of an affidavit containing specific information (Ariz. Rev. Stat. § 12-1301) and posting a bond equal to double the amount of the property (Ariz. Rev. Stat. § 12-1303). To claim possession of specific personal property, a plaintiff must provide proof showing: (1) the plaintiff is the owner of the property claimed or is lawfully entitled to its possession; (2) the property is wrongfully detained by the defendant; and (3) the actual value of the property. Ariz. Rev. Stat. § 12-1301.

Plaintiff BMO's motion and supporting affidavit satisfy the requirements for obtaining the remedy of replevin under Arizona law. (Docs. 1 at 2–4; 13-2.) BMO's Complaint and Motion contain sufficient detail regarding the Saw and its value, (Doc. 1 at 2–4), BMO's claim to lawful possession of the Saw, (Docs. 1 at 4; 1-2 at 5), and Defendants' wrongful withholding of the Saw following their default under the Agreement (Doc. 1 at 4). Additionally, BMO alleges that it has attempted to repossess the Saw or sought return of the Saw to no avail. (*Id.*)

C.  Fourth *Eitel* Factor—Sum at Stake

Under the fourth factor, this Court "must consider the amount of money at stake in relation to the seriousness of [Defendants'] conduct." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (citing *Cal. Sec. Cans*, 238 F. Supp. 2d

- 6 -

at 1176) (internal quotations omitted); *see also Eitel*, 782 F.2d at 1471–72. Here the relationship is proportional. Plaintiff BMO loaned Defendant A to Z $97,304.38 for the purchase of the Saw. Defendants defaulted on contractual agreements with BMO and failed to make regular payments for the Saw or to return the Saw. (Doc. 1 at 3–4.) The amount of money that remains unpaid in this action is substantial, totaling $81,269.08. (Doc. 13-2 at 22.) BMO requests $81,269.08 in damages for the outstanding payments, as well as the return of the Saw, with proceeds from its sale to be applied towards the final judgment amount. (Doc. 13-2 at 4.) BMO's request for damages is grounded in its contracts with the Defendants and is directly tailored to the Defendants' misconduct. The requested damages are not unreasonable, and therefore, this factor weighs in favor of entry of judgment.

### D. <u>Fifth, Sixth, and Seventh *Eitel* Factors—Possibility of Dispute Concerning Material Facts, Excusable Neglect, and Strong Policy Favoring Decisions on the Merits</u>

"In cases…in which Defendants have not participated in the litigation at all, the…fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020). The fifth *Eitel* factor considers the possibility of a dispute concerning the material facts. *See Eitel*, 782 F.2d at 1471. As noted previously, on entry of default, the Court may accept as true all well-pleaded facts in the Complaint, except those relating to damages, and any later provided evidence in the form of affidavits or exhibits. *See Televideo Sys., Inc.*, 826 F.2d at 917–18. Plaintiff BMO's well-pleaded Complaint alleges facts establishing its claims. A genuine dispute regarding the material facts of the Complaint appears remote. Thus the fifth factor weighs in favor of granting default judgment.

Under the sixth *Eitel* factor, the Court evaluates whether the failure to answer or defend is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Here, there is no indication of excusable neglect in Defendants' failure to participate in this litigation. All Defendants were served—with Anahit apparently avoiding service. (Doc. 14 at 1–2.) Thus, the sixth *Eitel* factor favors granting default judgment.

The seventh *Eitel* factor—public policy favoring decisions on the merits—generally

weighs against default judgment, given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b) of the Federal Rules of Civil Procedure, which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive." *Cal. Sec. Cans*, 238 F. Supp. 2d at 1177. Indeed, "the default mechanism is necessary to deal with wholly unresponsive parties who otherwise could cause the justice system to grind to a halt. Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court." *Ariz. Bd. of Regents v. Doe*, 555 F. Supp. 3d 805, 816 (D. Ariz. 2021) (quoting 2 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 55, at 123–24 (2021) (footnote omitted)). Such is the case here. Defendants have failed to defend, making a decision on the merits impractical. Consequently, the policy favoring decisions on the merits carries little weight here.

**V.     Damages**

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Additionally, the demand for relief must be specific. Fed. R. Civ. P. 8(a)(3). Because the allegations in Plaintiff's Complaint are taken as true, a "plaintiff need only prove that the compensation sought relates to the damages that naturally flow from the injuries pled." *Philip Morris USA, Inc.*, 219 F.R.D. at 498.

The relief Plaintiff BMO seeks is specific, does not exceed what is demanded in the Complaint,[2] and flows logically from the injuries pled. BMO seeks monetary damages in the amount of $81,269.08, with costs and interest, and possession of the Saw, with sales proceeds to apply towards the judgement amount. (Doc. 13-4.)

**VI.    Conclusion**

Collectively, the *Eitel* factors weigh in favor of entry of default judgment against Defendants and Plaintiff BMO has established that the requested damages are appropriate.

---

[2] Plaintiff's Complaint sought monetary damages in the amount of $86,065.29. (Doc. 1 at 3.) Plaintiff's Motions for Default Judgment request a lesser amount of $81,269.08. (Docs. 13-2 at 4; 19-2 at 3.) Plaintiff's request is supported by an affidavit, (Doc. 13-2 at 2–4), and Payment History for the Agreement, (*id.* at 22).

BMO has also shown it is entitled to the remedy of replevin. Accordingly,

**IT IS ORDERED** Plaintiff's Motions for Default Judgment As To Defendants A to Z Stone & Granite, Inc., Tigran Beglaryan, and Anahit Beglaryan (Docs. 13, 19) are **granted**.

**IT IS FURTHER ORDERED** Plaintiff BMO Bank NA is awarded damages in the amount of $81,269.08 against Defendants A to Z Stone & Granite, Inc., Tigran Beglaryan, and Anahit Beglaryan, jointly and severally.

**IT IS FURTHER ORDERED** the United States Marshals Service ("USMS") shall take possession of the Park Industries 5 Axis Saber Saw (Serial No. 250076) ("the Saw"), upon the filing by Plaintiff with the USMS a Bond of Replevin not less than twice the value of the Saw ($163,000), and deliver over to Plaintiff BMO Bank possession of the Saw, unless within two (2) days after the taking, the USMS receives a redelivery bond properly executed by Defendants and payable to Plaintiff in an amount not less than the value of the Saw to be seized by the USMS.

**IT IS FURTHER ORDERED** the USMS make due return of this Order showing how and when the same was executed. Plaintiff BMO Bank shall apply proceeds from the sale of the Saw to the balance due and owing from Defendants.

**IT IS FURTHER ORDERED** the Clerk of Court shall enter judgment in favor of Plaintiff and close this case.

Dated this 17th day of July, 2025.

_____
Jennifer G. Zipps
Chief United States District Judge